## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING
## CASPER DIVISION

C&M OILFIELD RENTALS, LLC §
D/B/A C-MOR ENERGY SERVICES, §
§
§
Plaintiff, §           Civil Action No. 1:22-cv-00156
§
v. §
§           **JURY TRIAL DEMANDED**
§
APOLLO ENERGY SERVICES CORP.; §
and CLEANTEK INDUSTRIES, INC., §
§
Defendants. §
§

### PLAINTIFF C&M OILFIELD RENTALS, LLC'S
### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services ("C&M"), by and through its undersigned attorneys, files this Complaint for Declaratory Judgment against Defendants Apollo Energy Services Corp. ("Apollo Energy") and Cleantek Industries, Inc. ("Cleantek") (collectively, "Apollo" or "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq. C&M seeks a declaration of invalidity, non-infringement, and unenforceability of United States Patent No. 11,391,121 (hereinafter "the '121 Patent").

### PARTIES

2.     C&M is a Wyoming limited liability company with its principal place of business located at 519 Circle Dr., Cody, WY 82414.

3.     On information and belief, Cleantek Industries Inc. is a Canadian company with its principal place of business at Suite 3200, 500 – 4th Avenue SW, Calgary Alberta, T2P 2v6.

4.     On information and belief, Apollo Energy Services Corp. was a Canadian company, with its principal place of business at 10213 Township Road 284A Suite Bldg 1000, Crossfield, B, T0M 0S0, Canada.  On information and belief, Apollo Energy was amalgamated with Cleantek effective January 1, 2022, and continues to operate under the name Cleantek.  Apollo Energy is listed as the owner of U.S. Patent No. 11,391,121.

5.     On information and belief, Cleantek acquired Apollo Energy and Apollo Lighting Solutions Inc. ("Apollo Lighting") on October 18, 2019.

| Name of subsidiary | Jurisdiction of incorporation/formation |
| --- | --- |
| Horizon Oilfield Manufacturing Inc.(1) | Alberta, Canada |
| Apollo Energy Services Corp.(2) | Alberta, Canada |
| Apollo Lighting Solutions Inc.(2) | Delaware, U.S.A. |

(1)  Incorporated on December 2, 2013 and amalgamated with Cleantek effective Cleantek on January 1, 2022.

(2)  Apollo Energy Services Corp. and Apollo Lighting Solutions Inc. (together "Apollo Energy") were acquired on October 18, 2018.  Apollo Energy Services Corp. was amalgamated with Cleantek effective January 1, 2022.

The Company's principal place of business is located at Suite 3200, 500 – 4th Avenue SW, Calgary, Alberta, T2P 2V6.

*See* Cleantek Industries Inc. Provides Operational Update (Mar. 28, 2022) at 11, https://cleantekinc.com/wp-content/uploads/2022/05/CTEK-2021-FS-Notes-FINAL.pdf.

## JURISDICTION AND VENUE

6.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

7.     This Court has subject matter jurisdiction over the claims alleged in this action at least under 28 U.S.C. §§ 1331, 1055, 1338, 2201 and 2202, because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

8.     This Court can provide the relief sought in this Declaratory Judgment Complaint regarding U.S. Patent No. 11,391,121 because an actual case and controversy exists between the

parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. §§ 2201, at least because counsel for Apollo, Greenblum & Bernstein, P.L.C., provided actual notice of the forthcoming issuance of the '121 Patent in an email to counsel for C&M on June 13, 2022, stating: "Apollo hereby provides notice to C&M of U.S. Patent Application Pub. No.: US 2021/0381344 pursuant to 35 U.S.C. § 154(d).  The publication is attached.  Apollo asserts the claims of U.S. Patent Application Pub. No.: US 2021/0381344 read on C&M's Crown Jewel lighting systems."  Exhibit 1.  In addition, Apollo Lighting, which was acquired by Cleantek on October 18, 2018, previously asserted that C&M's products infringed Apollo's prior patent, U.S. Patent No. 11,111,761 (the "'761 Patent").[1]

9.      In particular, the '121 Patent is a continuation of U.S. Patent No. 11,111,761, and shares a specification, figures, and relates to the same technology.  Apollo Lighting asserted counterclaims of infringement, alleging C&M's Crown Jewel lighting systems (which are the same systems identified in the §154(d) notice) infringed certain claims of the '761 Patent.  Because Apollo Lighting's prior infringement allegations involve the same technology as the '121 Patent, and given Apollo Lighting's willingness to bring patent infringement actions, a real, live, immediate, and justiciable case or controversy between C&M and Defendants.

10.     This Court has general and specific personal jurisdiction over Defendants pursuant to due process, Rule 4(k)(2) of the Federal Rules of Civil Procedure, and/or under the Wyoming Long-Arm Statute (Wyo. Stat. Ann. § 5-1-107), due at least to their substantial business in this State and Judicial District, including regularly conducting and/or soliciting business in Wyoming, contracting with entities in Wyoming for contracts to be performed in whole or in part in

---

[1] As discussed below (¶¶18-19), at Markman, the claims of '761 Patent were determined to be indefinite, and the patent was dropped from the lawsuit.  *See* Civil Action No. 6:21-cv-00544-ADA-DTG, ECF No. 74 (Markman Order) and 97 (Stipulation of Dismissal).

Wyoming, as well as engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to entities in Wyoming.  For example, Defendants provide their Halo lighting system to customers in Wyoming.

---

**Lighting Division**

The Company's HALO crown mounted lighting system has set the standard in high mast site lighting with our industry leading LED lighting solution.  The Corporation experienced a 45% increase in HALO revenue from October 2021 to January 2022.  The Company's Gen 2 light weight systems are operating at full capacity and make up over 70% of our current 130 unit HALO lighting fleet leading the Corporation to invest in the fabrication of an additional 20 HALO systems.  Cleantek anticipates all newly built units to be deployed upon completion. The Company forecasts the completion of two additional systems each month for the balance of 2022, with the ability to increase fabrication as demand grows. In line with our geographic expansion strategy, the Corporation has recently deployed HALO systems into North Dakota and Wyoming and continues to evaluate opportunities in additional geographies in North America and internationally.

---

*See* Cleantek March 28, 2022 Operational Update at 2 ("In line with our geographic expansion strategy, the Corporation has recently deployed HALO systems into North Dakota and Wyoming and continues to evaluate opportunities in additional geographies in North America and Internationally.")



*See* Cleantek Corporate Update – March 2022 at 5, https://cleantekinc.com/corporate-presentation/ (showing "Lighting Units" deployed in Wyoming).

11.     Venue is proper in this Court as to Cleantek and Apollo Energy pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Cleantek and Apollo Energy are not residents of the United States.

## LITIGATION AND PATENT HISTORY

12.     C&M incorporates the foregoing paragraphs 1-11 of its Complaint by reference as through fully set forth herein.

13.     C&M is a market-leading innovator in the development of modular drilling rig lighting systems, including the Crown Jewel lighting system.

14.     Cleantek is a company that offers and sells the HALO Crown-Mounted Lighting system for installation and operation at oil drilling rigs at well sites.

15.     On May 28, 2021, C&M filed a complaint, *C&M Oilfield Rentals, LLC v. Apollo Lighting Solutions Inc.*, Civil Action No. 6:21-cv-00544 (W.D. Tex. May 28, 2021) ("the WDTX Action"), against Apollo Lighting Solutions Inc. and Cleantek Industries, Inc. alleging that Apollo Lighting Solutions Inc. and Cleantek infringed C&M's U.S. Patent No. 10,976,016 (the "'016 Patent") by making, using, selling, leasing, importing, installing, supplying, and/or offering to sell or lease the HALO crown-mounted lighting system in the United States.

16.     Apollo Lighting asserted affirmative defenses of invalidity and inequitable conduct with respect to the '016 Patent.

17.     Apollo Lighting counterclaimed for infringement of U.S. Patent 11,111,761 alleging that C&M's "Crown Jewel" lighting system directly infringed one or more claims of the '761 Patent.  Apollo Lighting also included counterclaim-counts of invalidity with respect to the C&M's '016 Patent.

18.     On March 31, 2022, the parties argued for the constructions of 13 terms (6 for the '016 Patent and 7 for the '761 Patent).  On April 7, 2022, Judge Alan D. Albright found the term

"wherein the light fixture contains a fixed or removable light fixture attachment connecting the [at least] one light fixture to the crown" of the '761 Patent (as recited in independent claims 1 and 11) to be indefinite.  *See C&M Oilfield Rentals, LLC v. Apollo Lighting Solutions Inc.*, Civil Action No. 6:21-cv-00544, ECF No. 74.

19.     Because the independent claims of the '761 Patent were found indefinite, Apollo Lighting could not prevail on its infringement counterclaims and, on May 24, 2022, Apollo Lighting filed a stipulation of dismissal of its infringement counterclaims.  *Id.*, ECF No. 97.  The stipulation of dismissal was granted on May 26, 2022.  *Id.*, ECF No. 100.

20.     On December 9, 2021, Apollo Lighting and Cleantek served their Preliminary Invalidity Contentions in the WDTX Action.  Apollo Lighting and Cleantek identified prior art that allegedly rendered the claims of C&M's '016 Patent invalid, including claim charts mapping cited prior art to the asserted claims of C&M's '016 Patent.

21.     On April 22, 2022, Apollo Lighting and Cleantek served their Final Invalidity Contentions in the WDTX Action.  Apollo Lighting and Cleantek further identified prior art that allegedly rendered the claims of C&M's '016 Patent invalid, including claim charts mapping cited prior art to the asserted claim limitations of C&M's '016 Patent.

22.     On August 23, 2021, Apollo filed Application No. 17/409,055, a continuation of the (now invalidated) '761 Patent, directed at a "Drilling Rig with Attached Lighting System and Method."  The application issued as U.S. Patent No. 11,391,121 on July 19, 2022.  A copy of the application that issued as the '121 Patent is attached with Exhibit 1.

23.     On information and belief, the '121 Patent was assigned to Apollo Energy.  Further, during prosecution of the application that led to the '121 Patent, the Application Data Sheet (August 23, 2021) and the Issue Fee Transmittal (June 15, 2022) identify Apollo Energy as the

assignee of the '121 Patent. On information and belief, there are no other assignments of the '121 Patent.

24.      During prosecution of the application that led to the '121 Patent, on November 24, 2021, February 10, 2022, February 23, 2022, and April 15, 2022, Apollo Energy submitted various Information Disclosure Statements (IDS). The IDS forms identified C&M's '016 Patent, along with 32 other U.S. Patent Documents, as relevant prior art.

25.      However, Apollo Energy did not submit all of the art identified in its Preliminary Invalidity Contentions, and Apollo Energy did not submit the Preliminary and Final Invalidity Contentions, which includes the omission of the claim charts that set out Apollo Lighting's and Cleantek's understanding and application of the art in the Preliminary and Final Invalidity Contentions.

## CAUSES OF ACTION

### Count 1: Declaration of Non-infringement of U.S. Patent No. 11,391,121

26.      C&M incorporates by reference and realleges Paragraphs 1-25 of its Complaint, as though fully set forth herein.

27.      C&M has not infringed and does not infringe, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '121 Patent.

28.      In view of the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

29.      A judicial declaration is necessary and appropriate so that C&M may ascertain its rights regarding the '121 Patent.

### Count 2: Declaration of Invalidity of U.S. Patent No. 11,391,121

30.      C&M incorporates by reference and realleges Paragraphs 1-29 of its Complaint, as though fully set forth herein.

31.     The '121 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

32.     Under Apollo Lighting's and Cleantek's interpretation and analysis of existing prior art, the claims of the '121 Patent are anticipated or rendered obvious by that prior art.  For example, U.S. Patent No. 9,316,390 ("Gowanlock '390") predates the priority date of the '055 Application, and under Apollo Lighting's and Cleantek's analysis and arguments, includes each and every element of the '121 Patent's claims, including (by way of example only):

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 11, 16, 18, 22, 24, 27, 29, 32)

a plurality of light fixture attachments; (*See* Apollo's Preliminary Invalidity Contentions, pages 12, 14, 18, 20, 22, 29, 32)

wherein one or more light fixtures are attached to each light fixture attachment; (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 11, 12, 14, 18, 20, 22, 29, 32)

each light fixture attachment is separately attached to a crown of the rig; and (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 12, 14, 18, 20, 22, 29)

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.  (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 12, 14, 18, 22, 24, 27).

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*E.g.,* Apollo's Preliminary Invalidity Contentions, page 6).

<u>US Patent No. 9,316,390:</u>

4:65 "a plurality of light support posts 210 …"

6:28-29 "light support posts 210, onto which each of the lights 215 are mounted."

6:35-37 "Light support posts 210 preferably comprise a vertically extending post onto which a variety of styles of light fixtures 215 may be mounted."

FIGS. 2 and 3.



a plurality of light fixture attachments; (*E.g.,* Apollo's Preliminary Invalidity Contentions, page 18).

<u>US Patent No. 9,316,390:</u>

Title: "Lighting System For Drilling Rig"

1:5-7 "The present invention relates generally to the field of drilling apparatuses. Such as oil drilling rig arrangements, and in particular to a lighting system for use in an oil drilling rig."

5:1-10 "The plurality of light fixtures 215 arranged and separated vertically from each other by their positioning on the light support posts 210 permits for light to be directed in a predetermined region proximate the crown 100 and at a predetermined region encompassing a ground area surrounding the drill rig. That is, one group of lights may be directed towards particular equipment on the drilling rig, while another group may be directed to an area surrounding the drilling rig to provide maximum lighting for personnel working in or around the drilling rig."

wherein one or more light fixtures are attached to each light fixture attachment; (*E.g.,* Apollo's Preliminary Invalidity Contentions, page 11).

> **US Patent No. 9,316,390:**
>
> 6:28-29 "light support posts 210, onto which each of the lights 215 are mounted."
>
> 6:35-37 "Light support posts 210 preferably comprise a vertically extending post onto which a variety of styles of light fixtures 215 may be mounted."
>
> FIGS. 1, 2 and 3.

each light fixture attachment is separately attached to a crown of the rig; and (*E.g.,* Apollo's Preliminary Invalidity Contentions, page 12).

> **US Patent No. 9,316,390:**
>
> 6:42-49 "As shown in FIG. 5, in order to fix the lighting frame 205 with respect to the crown 100, brackets 300 may be provided proximate a bottom portion of each corner Support post 220. The brackets 300 may be adapted to be connected to corresponding brackets (not shown) on the crown 100 or alternatively, to be attached directly to a portion of the crown itself. For example, bolts may fix the brackets 300 directly into a portion of the crown."
>
> FIG. 5

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.   (*E.g.,* Apollo's Preliminary Invalidity Contentions, page 12).

> **US Patent No. 9,316,390:**
>
> 6:42-49 "As shown in FIG. 5, in order to fix the lighting frame 205 with respect to the crown 100, brackets 300 may be provided proximate a bottom portion of each corner Support post 220. The brackets 300 may be adapted to be connected to corresponding brackets (not shown) on the crown 100 or alternatively, to be attached directly to a portion of the crown itself. For example, bolts may fix the brackets 300 directly into a portion of the crown."
>
> FIG. 5

33.     Further, for example, CN203215413U predates the priority date of the '055 Application, and under Apollo Lighting's and Cleantek's analysis and arguments, includes each and every element of the '121 Patent's claims, including (by way of example only):

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*See* Apollo's Preliminary Invalidity Contentions, pages 10, 17, 18, 23 and Apollo's Final Invalidity Contentions, Ex. C, pages 2-8)

a plurality of light fixture attachments; (*See* Apollo's Preliminary Invalidity Contentions, pages 10, 12, 19, 22 and Apollo's Final Invalidity Contentions, Ex. C, pages 6, 10-13, 15-16)

wherein one or more light fixtures are attached to each light fixture attachment; (*See* Apollo's Preliminary Invalidity Contentions, pages 10, 19, 22 and Apollo's Final Invalidity Contentions, Ex. C pages 6-8, 12)

each light fixture attachment is separately attached to a crown of the rig; and (*See* Apollo's Preliminary Invalidity Contentions, pages 13, 15, 16, 19 and Apollo's Final Invalidity Contentions, Ex. C, pages 6, 8-14, 17)

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.  (*See* Apollo's Preliminary Invalidity Contentions, pages 13, 15, 16 and Apollo's Final Invalidity Contentions, Ex. C, pages 8-14, 17)

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*E.g.,* Apollo's Final Invalidity Contentions, Ex. C, page 5).



图 1

a plurality of light fixture attachments; (*E.g.,* Apollo's Final Invalidity Contentions, Ex. C, page 6).

CN '413 discloses a plurality of light units, each light unit separately attached to a crown deck of the rig:

[0020] As shown in FIG. **1**, a new model lamp holder for oil rig well site comprises a lamp base, an upper half of the lamp holder, a lower half of the lamp holder and lamp head. The upper half of the lamp holder is mounted on the lower half of the lamp holder via sleeving for vertical sliding and rotation. The lamp base has an opening; the bottom of the lower half of the lamp holder and the lamp base are hinged together and the rotation direction of the hinge is oriented towards the opening; the width of the bottom of the lower half of the lamp holder corresponding to the opening is smaller than the width of the opening; and the lamp head is disposed on the upper half of the lamp holder.

[0021] In another preferred embodiment, the new model lamp holder for oil rig well site further comprises a lamp base bottom plate and a lamp base pressure-plate. The lamp base pressure-plate is secured onto the lamp base bottom plate and the lamp base is disposed on the lamp base pressure-plate in a rotational way. The new model lamp holder for oil rig well site further comprises a pin shaft and fixing sleeve; the bottom of the lower half of the lamp holder is hinged to the lamp base via the pin shaft. The lower half of the lamp holder and the lamp base are secured via the fixing sleeve.

*See* FIG. 1.

wherein one or more light fixtures are attached to each light fixture attachment; (*E.g.,* Apollo's Final Invalidity Contentions, Ex. C, page 6).

CN '413 discloses a plurality of light units, each light unit separately attached to a crown deck of the rig:

[0020] As shown in FIG. **1**, a new model lamp holder for oil rig well site comprises a lamp base, an upper half of the lamp holder, a lower half of the lamp holder and lamp head. The upper half of the lamp holder is mounted on the lower half of the lamp holder via sleeving for vertical sliding and rotation. The lamp base has an opening; the bottom of the lower half of the lamp holder and the lamp base are hinged together and the rotation direction of the hinge is oriented towards the opening; the width of the bottom of the lower half of the lamp holder corresponding to the opening is smaller than the width of the opening; and the lamp head is disposed on the upper half of the lamp holder.

[0021] In another preferred embodiment, the new model lamp holder for oil rig well site further comprises a lamp base bottom plate and a lamp base pressure-plate. The lamp base pressure-plate is secured onto the lamp base bottom plate and the lamp base is disposed on the lamp base pressure-plate in a rotational way. The new model lamp holder for oil rig well site further comprises a pin shaft and fixing sleeve; the bottom of the lower half of the lamp holder is hinged to the lamp base via the pin shaft. The lower half of the lamp holder and the lamp base are secured via the fixing sleeve.

*See* FIG. 1.

each light fixture attachment is separately attached to a crown of the rig; and (*E.g.,* Apollo's Final Invalidity Contentions, Ex. C, page 6).

CN '413 discloses a plurality of light units, each light unit separately attached to a crown deck of the rig:

[0020] As shown in FIG. **1**, a new model lamp holder for oil rig well site comprises a lamp base, an upper half of the lamp holder, a lower half of the lamp holder and lamp head. The upper half of the lamp holder is mounted on the lower half of the lamp holder via sleeving for vertical sliding and rotation. The lamp base has an opening; the bottom of the lower half of the lamp holder and the lamp base are hinged together and the rotation direction of the hinge is oriented towards the opening; the width of the bottom of the lower half of the lamp holder corresponding to the opening is smaller than the width of the opening; and the lamp head is disposed on the upper half of the lamp holder.

[0021] In another preferred embodiment, the new model lamp holder for oil rig well site further comprises a lamp base bottom plate and a lamp base pressure-plate. The lamp base pressure-plate is secured onto the lamp base bottom plate and the lamp base is disposed on the lamp base pressure-plate in a rotational way. The new model lamp holder for oil rig well site further comprises a pin shaft and fixing sleeve; the bottom of the lower half of the lamp holder is hinged to the lamp base via the pin shaft. The lower half of the lamp holder and the lamp base are secured via the fixing sleeve.

*See* FIG. 1.

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown. (*E.g.,* Apollo's Final Invalidity Contentions, Ex. C, page 6).

CN '413 discloses a plurality of light units, each light unit separately attached to a crown deck of the rig:

[0020] As shown in FIG. **1**, a new model lamp holder for oil rig well site comprises a lamp base, an upper half of the lamp holder, a lower half of the lamp holder and lamp head. The upper half of the lamp holder is mounted on the lower half of the lamp holder via sleeving for vertical sliding and rotation. The lamp base has an opening; the bottom of the lower half of the lamp holder and the lamp base are hinged together and the rotation direction of the hinge is oriented towards the opening; the width of the bottom of the lower half of the lamp holder corresponding to the opening is smaller than the width of the opening; and the lamp head is disposed on the upper half of the lamp holder.

[0021] In another preferred embodiment, the new model lamp holder for oil rig well site further comprises a lamp base bottom plate and a lamp base pressure-plate. The lamp base pressure-plate is secured onto the lamp base bottom plate and the lamp base is disposed on the lamp base pressure-plate in a rotational way. The new model lamp holder for oil rig well site further comprises a pin shaft and fixing sleeve; the bottom of the lower half of the lamp holder is hinged to the lamp base via the pin shaft. The lower half of the lamp holder and the lamp base are secured via the fixing sleeve.

*See* FIG. 1.

34.     Further, for example, CN103836575B predates the priority date of the '055 Application, and under Apollo Lighting's and Cleantek's analysis and arguments, includes each and every element of the '121 Patent's claims, including (by way of example only):

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*See* Apollo's Preliminary Invalidity Contentions, pages 4, 17, 18, 23, 24 and, Apollo's Final Invalidity Contentions, Ex. M, pages 2-4.)

a plurality of light fixture attachments; (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 12, 22, 24 and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5.)

wherein one or more light fixtures are attached to each light fixture attachment; (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 13, 15, 22, 24  and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5, 8.)

each light fixture attachment is separately attached to a crown of the rig; and (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 13, 15, 17, 19, 24 and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5, 8-9. )

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.  (*See* Apollo's Preliminary Invalidity Contentions, pages 17, 19 and Apollo's Final Invalidity Contentions, Ex. M, pages 8-9.)

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*E.g.,* Apollo's Final Invalidity Contentions, Ex. M, page 4).



a plurality of light fixture attachments; (*E.g.,* Apollo's Final Invalidity Contentions, Ex. M, page 4).

CN '575 discloses a light unit separately attached to the derrick of the drilling rig.

"In this embodiment, the fixed beam 13 is a steel beam of the derrick of the drilling platform." P. 4.

wherein one or more light fixtures are attached to each light fixture attachment; (*E.g.,* Apollo's Final Invalidity Contentions, Ex. M, page 8).

CN '575 discloses attaching a plurality of mounting poles on a crown deck of a rig comprising attaching a removable bracket to one or more of the mounting poles; and using the removable bracket to attach one or more of the mounting poles to the rig.



As shown in FIG. 5, the bracket buckle 11 has a "□" shape and includes an upper wall 113, a side wall 114, and a lower wall 115. It should be noted that the bracket buckle 11 has a "□" shape only to indicate that its shape is substantially "□" shape, and does not limit the upper wall 113, the side wall 114 and the lower wall 115 to have a specific angle therebetween. The angle can be adjusted according to the needs of the actual application, which should be known to those skilled in the art, and will not be described herein. P. 4

each light fixture attachment is separately attached to a crown of the rig; and (*E.g.,* Apollo's Final Invalidity Contentions, Ex. M, page 8).

CN '575 discloses attaching a plurality of mounting poles on a crown deck of a rig comprising attaching a removable bracket to one or more of the mounting poles; and using the removable bracket to attach one or more of the mounting poles to the rig.



As shown in FIG. 5, the bracket buckle 11 has a "□" shape and includes an upper wall 113, a side wall 114, and a lower wall 115. It should be noted that the bracket buckle 11 has a "□" shape only to indicate that its shape is substantially "□" shape, and does not limit the upper wall 113, the side wall 114 and the lower wall 115 to have a specific angle therebetween. The angle can be adjusted according to the needs of the actual application, which should be known to those skilled in the art, and will not be described herein. P. 4

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown. (*E.g.,* Apollo's Final Invalidity Contentions, Ex. M, page 8).

CN '575 discloses attaching a plurality of mounting poles on a crown deck of a rig comprising attaching a removable bracket to one or more of the mounting poles; and using the removable bracket to attach one or more of the mounting poles to the rig.



As shown in FIG. 5, the bracket buckle 11 has a "□" shape and includes an upper wall 113, a side wall 114, and a lower wall 115. It should be noted that the bracket buckle 11 has a "□" shape only to indicate that its shape is substantially "□" shape, and does not limit the upper wall 113, the side wall 114 and the lower wall 115 to have a specific angle therebetween. The angle can be adjusted according to the needs of the actual application, which should be known to those skilled in the art, and will not be described herein. P. 4

35.     In view of the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

36.     A judicial declaration is necessary and appropriate so that C&M may ascertain its rights regarding the '121 Patent.

**Count 3: Declaration of Unenforceability of U.S. Patent No. 11,391,121**

37.     C&M incorporates by reference and realleges Paragraphs 1-36 of its Complaint, as though fully set forth herein.

38.     Under 37 CFR 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes

a duty to disclose to the Office all information known to that individual to be material to patentability.

39.     Under 37 CFR 1.56, individuals associated with the filing or prosecution of a patent application include each inventor named in the application, each attorney or agent who prepares or prosecutes the application, and every other person who is substantively involved in the preparation or prosecution of application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

40.     All individuals covered by 37 CFR 1.56 have a duty to disclose to the U.S. Patent and Trademark Office all material information they are aware of regardless of the source of or how they become aware of the information.

41.     Individuals covered by 37 CFR 1.56 may be or become aware of material information from various sources such as, for example, related litigation and/or post-grant proceedings and preliminary examination searches.  For example, the Manual of Patent Examining Procedure (June 2020) states at section 2001.06(c):  "Where the subject matter for which a patent is being sought is or has been involved in litigation and/or a trial proceeding, or the litigation and/or trial proceeding yields information material to currently pending applications, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner or other appropriate official at the U.S. Patent and Trademark Office. In particular, material information that is raised in trial proceedings that is relevant to related applications undergoing examination should be submitted on an Information Disclosure Statement for the examiner's consideration."

42.     On information and belief, individuals subject to the duty of candor under 37 CFR 1.56, named inventor Matthew Gowanlock and prosecuting attorney Walter Schlapkohl, engaged

in inequitable conduct by withholding or misstating material information with intent to deceive the USPTO in connection with prosecuting the '121 Patent, rendering the '121 Patent unenforceable.

43. Mr. Gowanlock is a named inventor on the '761 Patent asserted in the WDTX action, is President and CEO of Cleantek and Apollo Lighting, and served as a Rule 30(b)(6) witness in the WDTX action.

44. Mr. Schlapkohl is an attorney from the law firm of Greenblum & Bernstein, P.L.C. and a prosecuting attorney of the '121 Patent.

45. Attorneys from the law firm of Greenblum & Bernstein, P.L.C. represent Cleantek and Apollo Lighting in the WDTX action.

46. On information and belief, during prosecution of the application that led to the '121 Patent, Messrs. Gowanlock and Schlapkohl were aware of prior art and other information that they knew was material to patentability, including prior public disclosures and invalidity arguments from co-pending litigation that are material to patentability, which each of Messrs. Gowanlock and Schlapkohl deliberately failed to properly disclose to the USPTO with intent to deceive.

47. On December 9, 2021, Apollo Lighting and Cleantek served Preliminary Invalidity Contentions in the WDTX Action. Apollo Lighting and Cleantek asserted that the '016 Patent was invalid and identified 28 pertinent references of prior art.

48. The '016 Patent is directed to the same field of invention as the '121 Patent, "an attachable lighting system for a drilling rig." Prior art references and associated analysis of those prior art references pertinent to C&M's '016 Patent would be material to the patentability of the application that issued as the '121 Patent because the information is not cumulative to information already of record in the application and establishes, by itself or in combination with other

information, a prima facie case of unpatentability of each claim.  Additionally, any prior art references and associated analysis of prior art references to the '761 Patent would be material to the patentability of the '121 Patent because the information is not cumulative to information already of record in the application and establishes, by itself or in combination with other information, a prima facie case of unpatentability of each claim.

49.     During prosecution of the application that led to the '121 Patent, on November 24, 2021, February 10, 2022, February 23, 2022, and April 15, 2022, Apollo Energy submitted various Information Disclosure Statements (IDS).  The IDS forms identified the '016 Patent, along with 32 other U.S. Patent Documents, as material prior art.

50.     Despite Apollo Lighting's and Cleantek's research and analysis of the prior art, as well as the application of this art against the '016 Patent, Apollo Energy failed to submit all of the art, charts, and analysis in the WDTX Preliminary and Final Invalidity Contentions to the Patent Office in any of the four IDS Apollo filed.  For example. Apollo Energy failed to identify at least U.S. Patent No. 4,228,489; U.S. Patent No. 9,976,298; U.S. Patent No. 8,371,460; U.S. Patent No. 6,768,474; U.S. Patent No. 6,283,425; U.S. Patent No. 5,060,435; U.S. Patent No. 4,595,165; U.S. Patent No. 4,295,308; U.S. Patent No. 3,358,952; U.S. Patent No. 1,7061215; and U.S. Patent Pub. 2005/0252124.  Because it is not cumulative to information already of record in the application and establishes, by itself or in combination with other information, a prima facie case of unpatentability of each claim, it would have been material to the prosecution of the '121 Patent.

51.     Further, Apollo Energy failed to provide the WDTX Preliminary Invalidity Contentions, and the Claim Charts analyzing and applying the prior art.  This information, including Apollo Lighting's and Cleantek's analysis and interpretation of the prior art would have been material to the prosecution of the claims of the '055 Application.  At a minimum, under

Apollo Lighting's and Cleantek's interpretation and analysis of the prior art that existed prior to the filing of the '055 Application, it discloses all of the claim limitations of the claims of the '121 Patent, and the claims would have been rejected.

52.     Mr. Gowanlock, as a named inventor on the '121 Patent, a named inventor on the '761 Patent, a Rule 30(b)(6) witness in the WDTX action, and the President and CEO of Cleantek and Apollo Lighting had knowledge of the prosecution of the '121 Patent and had knowledge of the Invalidity Claim Charts and Invalidity Contention Prior Art served in the WDTX Action.

53.     For example, U.S. Patent No. 9,316,390 ("Gowanlock '390") predates the priority date of the '055 Application, and under Apollo Lighting's and Cleantek's analysis and arguments, includes each and every element of the '121 Patent's claims, including (by way of example only):

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 11, 16, 18, 22, 24, 27, 29, 32)

a plurality of light fixture attachments; (*See* Apollo's Preliminary Invalidity Contentions, 12, 14, 18, 20, 22, 29, 32)

wherein one or more light fixtures are attached to each light fixture attachment; (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 11, 12, 14, 18, 20, 22, 29, 32)

each light fixture attachment is separately attached to a crown of the rig; and (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 12, 14, 18, 20, 22, 29)

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.  (*See* Apollo's Preliminary Invalidity Contentions, pages 6, 12, 14, 18, 22, 24, 27).

54.     Further, on April 22, 2022, Cleantek and Apollo Lighting served Final Invalidity Contentions in the WDTX Action.  Cleantek and Apollo Lighting asserted that the '016 Patent was invalid and identified 13 pertinent references of prior art.

55.     Despite Cleantek's and Apollo Lighting's research and analysis of this art, as well as the application of this art against the '016 Patent, Apollo Energy failed to provide the Final Invalidity Contentions and the Claim Charts analyzing and applying the prior art to the Patent

Office in prosecution of the '055 Application. This information, including Cleantek's and Apollo Lighting's understanding and interpretation of the prior art would have been material to the prosecution of the claims of the '055 Application because it is not cumulative to information already of record in the application and establishes, by itself or in combination with other information, a prima facie case of unpatentability of each claim. At a minimum, and as argued by Cleantek's and Apollo Lighting's own claim charts, because the prior art that existed prior to the filing of the '055 Application purportedly embodies all of the claim limitations, the claims would have been rejected.

56.  For example, CN103836575B predates the priority date of the '055 Application, and under Apollo Lighting's and Cleantek's analysis and arguments, includes each and every element of the '121 Patent's claims, including (by way of example only):

1. A lighting system for a rig comprising: a plurality of light fixtures; and (*See* Apollo's Preliminary Invalidity Contentions, pages 4, 17, 18, 23, 24 and Apollo's Final Invalidity Contentions, Ex. M, pages 2-4).

a plurality of light fixture attachments; (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 12, 22, 24 and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5).

wherein one or more light fixtures are attached to each light fixture attachment; (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 13, 15, 22, 24  and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5, 8).

each light fixture attachment is separately attached to a crown of the rig; and (*See* Apollo's Preliminary Invalidity Contentions, pages 5, 13, 15, 17, 19, 24 and Apollo's Final Invalidity Contentions, Ex. M, pages 4-5, 8-9).

one or more of the light fixture attachments are separately attached on each of at least two sides of the crown.  (*See* Apollo's Preliminary Invalidity Contentions, pages 17, 19 and Apollo's Final Invalidity Contentions, Ex. M, pages 8-9).

57.  C&M also served Preliminary Invalidity Contentions on December 9, 2021 in the same action. C&M asserted that the '761 Patent (the parent of the '121 Patent) was invalid and identified 7 pertinent references of prior art. Apollo Energy failed to disclose the Invalidity Claim

Charts demonstrating where each limitation of the '761 Patent claims is found in the prior art. This information, including the application of the art to the '761 Patent Claims, would have been material to the prosecution of the claims of the '055 Application. At a minimum, and as evidenced by the claim charts, because the prior art that existed prior to the filing of the '055 Application embody all of the claim limitations, the claims would have been rejected.

58.     For example, C&M charted U.S. Patent No. 9,316,390 ("Gowanlock '390") and alleged that Gowanlock '390 includes each and every element of the '761 Patent's claims.

59.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

60.     Messrs. Gowanlock and Schlapkohl had a duty to disclose material prior art and other material information to the USPTO during prosecution.

61.     Messrs. Gowanlock and Schlapkohl knew that the prior art and contentions described above included prior art predating the priority date of the '055 Application.

62.     Despite having knowledge of these materials, Messrs. Gowanlock and Schlapkohl deliberately withheld this knowledge from the USPTO in order to ensure that the '121 Patent would issue.

63.     The existence of this information would have been material to the prosecution of the '055 Application because it is not cumulative to information already of record in the application and establishes, by itself or in combination with other information, a prima facie case of unpatentability of each claim.

64.     The prior art and contentions, including the claim charts, would invalidate or render obvious at least claim 1 of the '121 Patent because, under Cleantek's and Apollo Lighting's

interpretation and analysis of the prior art as set forth in the contentions discloses each limitation of claim 1.

65.     Messrs. Gowanlock and Schlapkohl  deliberately withheld this knowledge from the USPTO in order to gain allowance of the '121 Patent.

66.     The only reasonable inference from withholding of this information is that Messrs. Gowanlock and Schlapkohl intended to deceive the USPTO into issuing a patent with claims that embody the prior art Apollo had analyzed and applied in the pending action.

67.     But for this intentional failure to inform the USPTO of the materials described above, the '055 Application would not have issued as the '121 Patent because each claim of the '121 Patent would have been rejected as anticipated or obvious.

68.     A judicial declaration is necessary and appropriate so that C&M may ascertain its rights regarding the '121 Patent.

## JURY DEMAND

69.     Pursuant to Federal Rule of Civil Procedure 38(b), C&M requests a trial by jury on all issues.

## PRAYER

70.     For these reasons, C&M asks for a judgment against Defendants that includes the following relief:

(A)     A declaration that C&M has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '121 Patent literally or under the doctrine of equivalents;

(B)     A declaration that the claims of the '121 Patent are invalid;

(C)     A declaration that the '121 Patent is unenforceable;

(D)     An order declaring that this is an exceptional case and awarding C&M its reasonable attorney fees under 35 U.S.C. § 285; and

(E)     Such other relief as this Court deems fair, just, and appropriate.

Dated: July 18, 2022                              Respectfully submitted,

                                                  /s/ *Antoinette M. Tease*
                                                  Antoinette M. Tease
                                                  toni@teaselaw.com
                                                  Wyoming Bar No. 7-6346
                                                  Antoinette M. Tease, P.L.L.C.
                                                  175 N. 27th St., Ste. 902
                                                  Billings, Montana 59101
                                                  T. (406) 294-9000
                                                  F. (406) 294-9002

                                                  Elizabeth M. Chiaviello (admitted *pro hac vice*)
                                                  Texas Bar No. 24088913
                                                  elizabeth.chiaviello@morganlewis.com
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  1717 Main Street, Suite 3200
                                                  Dallas, Texas 75201-7347
                                                  T. (214) 466-4000
                                                  F. (214) 466-4001

                                                  Jason C. White (admitted *pro hac vice*)
                                                  Illinois Bar No. 6238352
                                                  jason.white@morganlewis.com
                                                  Karon N. Fowler (admitted *pro hac vice*)
                                                  California Bar No. 308145
                                                  Illinois Bar No. 6333623
                                                  karon.fowler@morganlewis.com
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  110 N. Wacker Drive, Suite 2800
                                                  Chicago, IL 60606
                                                  T. (312) 324-1000
                                                  F. (312) 324-1001

Susan K. Stradley (admitted *pro hac vice*)
Texas Bar No. 24117102
susan.stradley@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
T. (713) 890-5000 Telephone
F. (713) 890-5001 Facsimile


*Counsel for Plaintiff*
*C&M Oilfield Rentals, LLC*




## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record who are deemed to have consented to electronic service on this 18th day of July 2022.

/s/ *Antoinette M. Tease*
Antoinette M. Tease